CASE 83—PROSECUTION AGAINST ROBERT INGRAM FOR SEDUCTION UNDER PROMISE OF MARRIAGE.—FEB. 5.

# Ingram v. Commonwealth.

APPEAL FROM METCALFE CIRCUIT COURT.

DEFENDANT CONVICTED AND APPEALS. REVERSED.

SEDUCTION—EVIDENCE—HARMLESS ERROR—OFFER TO MARRY—DEFENSE.

Held: 1. In a prosecution for seduction under promise of marriage, where there was evidence that defendant offered to marry prosecutrix after the alleged seduction, and that she saw her father and defendant in consultation with reference to the proposed marriage, it was error to refuse to allow prosecutrix to testify on cross-examination as to a conversation between herself and defendant immediately after the latter's interview with the father, in which defendant stated that he had told the father of the seduction, notwithstanding which he had refused his consent to the marriage.

2. Exclusion of this evidence was, however, non-prejudicial, in view of the testimony of both defendant and the father that, at the time of the conversation, defendant did not tell the father that he had had sexual intercourse with prosecutrix.

3. Under Kentucky Statutes, c. 36, subd. 12, section 1214, declaring that no prosecution for seduction shall be instituted when the person charged shall have married the girl se-

duced, and any prosecution shall be discontinued if accused marry the girl before final judgment, a *bona fide* offer to marry the prosecutrix before the institution of the prosecution, though refused by her, is a complete defense.

M. O. SCOTT & W. S. PRYOR, FOR APPELLANT.

1. Our contention is that it is in the power of the defendant at any time before judgment, to marry the girl whom he has seduced and be exonerated, or if he offers to marry her in open court in good faith and she refuses, the prosecution should be dismissed.

2. The refusal of the court to instruct the jury that if the defendant offered to marry the prosecutrix in good faith after the seduction, he should be acquitted, was error. Wright v. Com., 16 Ky. Law Rep., 251; Ky. Statutes, sec. 214.

CLIFTON J. PRATT, ATTORNEY GENERAL, AND M. R. TODD, FOR APPELLEE.

The defendant admits the seduction and seeks to relieve himself of the law's just penalty for the offense, by saying that he desired to marry her and offered to do so.

The appellant offered to prove by her "that he told her that he said to her father he wanted to marry her and that he had had intercourse with her but her father would not let her marry." This evidence was properly rejected by the court as hearsay.

But conceding the evidence to be competent it was not prejudicial error to exclude it, as the appellant had not complied and is now unable to comply with the statute by marrying her as he has married another woman since the seduction.

OPINION OF THE COURT BY JUDGE SETTLE—REVERSING.

The appellant, Robert Ingram, colored, was indicted in the Metcalfe circuit court for the seduction under promise of marriage, of one Curtis Pendleton, also colored,—a female under twenty-one years of age. The trial resulted in a conviction, his punishment being fixed by the verdict of the jury at three years' confinement in the penitentiary. The motion of appellant for a new trial having been overruled, he prosecutes this appeal.

There are but two questions necessary to be considered by this court: First. Did the lower court err in refusing

to permit appellant's counsel, upon cross-examination, to ask the prosecutrix in reference to a conversation she had with appellant, in which the latter claimed to have reported to her what had been said by her father in refusing his consent to their marriage? Second. Did the court err in refusing to give instruction No. 3 asked by appellant's counsel?

The following facts seem to be fully established by evidence, viz.: First, that appellant did on at least two occasions have sexual intercourse with the girl, Curtis Pendleton; second, that he did promise to marry her, and, third, that the father of the girl refused his consent to such marriage. There is, however, this difference between the statements of the prosecuting witness and those of appellant: She says the promise of marriage was made by appellant before and when he first had carnal knowledge of her, and he says it occurred afterward. She also testified that no other man ever had similar intercourse with her, and that she would not have yielded her person to the gratification of appellant's lust but for his promise to marry her, and his assurance, as a minister of the gospel, that he would comply with his promise. Appellant testified that, after his illicit intercourse with the girl, he offered, in good faith, to marry her, and asked her father to permit him to do so, but the latter refused his consent; that he then reported to the daughter what the father said, and she refused to marry him without her father's consent. Appellant further testified that he later went to see the girl, and offered to take her to Tennessee and marry her without her father's consent, but she refused to go with him, and not a great while thereafter, he married another woman. These conversations were denied by the girl in rebuttal, and she also testified that she did not refuse to go with him to Ten-

nessee to be married, but, upon the contrary, asked him to take her to that State for that purpose, which he refused to do.    George Pendleton, the father of Curtis, when in- troduced as a witness, admitted that appellant had asked his permission to marry her, but that he had refused his consent on account of her youth, and so informed appel- lant.    He also testified that he did not know at the time of the conversation with appellant that the latter had se- duced his daughter.    The question asked by appellant's counsel of the girl on cross-examination, which she was not permitted by the court to answer, was, in substance, as follows:  "When the defendant returned to you from your father, did he not state to you what had passed between him and your father about the marriage, and tell you what your father said about it?"    It was avowed by counsel that the witness, if permitted to answer the question, would have said:  "The defendant did tell me that he had stated to my father that he had had intercourse with me, but that my father would not let me marry him, and I told him that I knew I was pregnant, but I would not marry him or go to Tennessee with him."    Though the avowal shows that a part of the expected answer would not have been responsive to the question, still we think the question not improper, as the girl testified that appellant, with her knowledge, went to her father to obtain his consent to their marriage, and she saw them in consultation; and, as he immediately reported to her what had been said by the father, she should, we think, have been permitted to state all that was said by appellant and herself when he report- ed to her the conversation with her father.    We are of opinion, however, that the refusal of the lower court to permit the question to be answered did not operate to the prejudice of appellant, as he and George Pendleton both

testified that he did not, in the conversation mentioned, inform the latter that he had had intercourse with the daughter.

While we do not think it would have been proper for the lower court to instruct the jury in form as set forth in instruction No. 3 asked by counsel for appellant, we are of the opinion they should have been instructed, in substance, that if they believed from the evidence that appellant, after the seduction of Curtis Pendleton, and before his marriage to another woman, in good faith offered to marry her, but was prevented from doing so by her refusal to consent thereto, if she did so refuse, he, was entitled to an acquittal. Such an instruction, with those given by the court, would, we think, have presented the whole law of the case to the jury.

The prosecutrix and her father corroborate the appellant as to the offer of marriage made by him at the time the father refused his consent, and, though the daughter denied that any offer of marriage was made by appellant after her father's consent was refused, appellant testified that he did again, and in good faith, make such offer, notwithstanding the opposition of the parent. We are unable to say what credit, if any, was given by the jury to these statements of appellant, or what weight they might have given them under proper instructions from the court. In any event, we know the failure of the trial court to instruct the jury as indicated deprived appellant of any benefit that he might otherwise have received from his testimony with respect to the offer of marriage, as effectually as if the testimony had been excluded altogether from the consideration of the jury.

The statute under which this prosecution against appellant was instituted (section 1214, subd. 12, c. 36, Ken-

tucky Statutes) provides that: "No prosecution shall be instituted when the person charged shall have married the girl seduced, and any prosecution instituted shall be discontinued if the party accused marry the girl seduced before final judgment. All prosecutions under this section shall be instituted within two years after the commission of the offense." This court, in the case of the Commonwealth v. Wright, 16 R., 251, 27 S. W., 815, affirmed the judgment of the circuit court, which dismissed an indictment for seduction against Wright, who appeared in court upon the call of the case for trial, and offered then and there to marry the woman whom he had seduced, but she refused the offer, and the marriage did not take place. In recording its approval of the action of the lower court in dismissing the prosecution, this court said: "The marriage of the parties is the purpose, intent, and spirit of the statute. Within its keeping, the past misery and shame may be forgotten, the future happiness of both secured; so that, the statute being so construed, although the seducer be forced almost to the very doors of the penitentiary before offering to fulfill his promise of marriage, yet, having done so in good faith, and his offer having been declined, he can do no more. The woman, and not the man, defeats the object and purpose of the law." If, therefore, the offense denounced by the statute may, as in the case supra, be condoned because of an offer of reparation made at the eleventh hour, may not an earlier offer of atonement by the offender merit a like favor at the hands of the law? Appellant testified that such an offer was made by him in good faith, and if so, and it was rejected by the prosecutrix, the defense thus presented was authorized by the statute, and the jury should have been instructed thereon by the court.

For the reasons indicated, the judgment of the lower court is reversed, and the case remanded for a new trial, and such other proceedings as may not be inconsistent with this opinion.