## Walling v. Commonwealth.

(Decided November 6, 1925.)

## Appeal from Estill Circuit Court.

1. Seduction—Where Evidence of Defendant's Offer of Marriage and Rejection was Denied, Case was Properly Submitted to Jury.— In prosecution for seduction, where defendant's testimony that he made a bona fide offer of marriage to prosecutrix, during her pregnancy and before indictment, which she rejected, was denied by prosecutrix, an issue of fact was raised requiring submission of case to jury, and defendant was not entitled to a directed verdict under seduction statute requiring such evidence to be uncontradicted.

2. Seduction—Bona Fide Offer of Marriage and Rejection Bar to Prosecution.—Under seduction statute providing that no prosecution shall be instituted when person charged shall have married girl seduced, a bona fide offer of marriage before final judgment, which is rejected, is a bar to prosecution.

3. Seduction—Evidence Held Not to Support Conviction.—In prosecution for seduction, where evidence of promises of marriage by defendant were indefinite and failed to indicate that they were made before acts of sexual intercourse, or that prosecutrix was seduced by such promises, but showed nonreliance on promises of marriage, which were all rejected, and that she was unwilling to marry defendant until discovery of pregnancy, a conviction for seduction was unsupported by evidence under rule that where seduction is punishable only when under a promise of marriage, such promise is a necessary element of crime, and it must appear that prosecutrix yielded in consequence of such promise.

EZART ASHCRAFT for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHARLES F. CREAL, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Settle—Reversing.

The appellant, Grant Walling, following his indictment in the court below for the seduction, under promise of marriage, of Bernice Hughes, an unmarried female under the age of 21 years, was on his trial in that court by verdict of a jury found guilty of the crime, and his punishment fixed at confinement for one year in the penitentiary. He complains of the judgment of the trial court approving that verdict, and by this appeal seeks its reversal.

The grounds chiefly relied on by the appellant in the court below in support of his motion for a new trial, and now urged by him for the reversal of that court's judgment are, that error was committed by the trial court: (1) In failing to properly instruct the jury as to all the law of the case. (2) In overruling his motion, made at the close of the Commonwealth's evidence, and, again, at the conclusion of all the evidence, for an instruction peremptorily directing his acquittal of the crime charged by a verdict of the jury. (3) That the verdict was contrary to law and flagrantly against the evidence.

As the kinship of the appellant's second and third contentions is obvious, they will be considered together and first disposed of.

We find from our reading of the evidence, that the appellant, Grant Walling, and Bernice Hughes, the prosecutrix and only witness for the Commonwealth, had been intimately acquainted from their childhood. In the matter of age she was nearly three years his senior; and at the time of his trial, which occurred in May, 1925, was over twenty years old and became twenty-one in August following. He was then barely eighteen. At the time of the alleged occurrence of the seduction of which he was convicted, she was nineteen and he seventeen years old. Their intimacy did not include visits from him to her home, as her mother objected to his attentions to the daughter. But there were frequent meetings between them, usually prearranged, which took place at church or at the homes of her neighbors; and from these meetings he would escort her to, or near, her home. On one occasion he accompanied her by automobile to Cincinnati, Ohio, on a visit to her father, where she was left by the appellant, who on the same day returned to his home in Kentucky. The intimacy thus shown to have existed

between the appellant and prosecutrix continued several years, certainly not less than three or four; and perhaps for as much as two years of that time was attended by, frequent acts of sexual intercourse between them, which resulted in her pregnancy, the birth of the child, and his indictment for and conviction of the crime of seduction.

There is no contrariety of evidence as to the facts thus far stated. Indeed, they were and are freely admitted both by the prosecutrix and the appellant.

The evidence, however, fails to definitely disclose when or where the act of sexual intercourse necessary to complete the crime of seduction charged took place. The prosecutrix, near the close of her examination in chief, in reply to a leading question from counsel for the Commonwealth, asking "if it did occur in Estill county," answered that it did. But from her testimony on the cross-examination it is fairly inferable that it occurred elsewhere and while she and appellant were on their way to Cincinnati. If the crime was committed on the way to Cincinnati, in the absence of a showing that it was committed before the parties left Estill county, it would seem that the Estill circuit court did not have jurisdiction of the prosecution. However, as the appellant made no objection to the jurisdiction of the trial court, this feature of the evidence is only mentioned as one of the several examples found in the record of the indefinite character of the testimony furnished by the prosecutrix.

The prosecutrix, in further testifying, substantially stated that the appellant repeatedly promised to marry her and that they frequently had sexual intercourse; that none of his repeated promises of marriage were accepted or assented to by her, but that upon becoming aware of her pregnancy, she was willing to marry him and so informed him, and that he then refused to marry her, and shortly thereafter married another woman. And although on her re-examination she did in a single instance state, in reply to a leading question by counsel for the Commonwealth asking if she did not in yielding to sexual intercourse with the appellant rely upon his promise or assurance of marriage, give an affirmative answer, it is by no means clear that either the question, or answer, referred to the act of sexual intercourse by which her seduction was alleged to have been accomplished.

She wholly failed to testify in chief, on her cross-examination or re-examination, that her first or any act

of sexual intercourse with the appellant, though all were claimed to have been preceded by a promise to marry her made by him, was preceded or attended by any promise or assurance on her part that she would marry him. On the contrary, she positively testified, and her testimony. as a whole can fairly be given no other meaning, that each and all of the several promises or offers of marriage made her by the appellant were made before she discovered her pregnancy; that these promises or offers were all rejected by her, and that she was never willing to marry him until she discovered her pregnancy. Indeed, she stated on cross-examination that in making promises or offers of marriage to her the appellant "went on with so much foolishness I didn't know what he meant, whether he meant he would or wouldn't have me."

That the appellant greatly admired the prosecutrix and repeatedly proposed marriage to her and offered to marry her, both before and after the acts of sexual intercourse in which they indulged, was frankly admitted by him when testifying in his own behalf. It was, however, also substantially testified by him, that each and every offer or promise of marriage made by him to the prosecutrix was rejected by her; and that neither the first nor any other act of sexual intercourse between them was immediately preceded by any promise or offer of marriage on his part, nor was she induced by any such promise or offer to assent or yield to such intercourse with him.

As we view the testimony of the prosecutrix it presents little vital contradiction of that of the appellant and in many material respects corroborates it. Indeed, the only positive or material contradiction of the appellant's testimony made by that of the prosecutrix is contained in her denial of a conversation he claimed to have had with her at the residence of his sister, Mrs. Martha Tipton, in the latter's presence and that of a half-sister, Ada Berger, shortly before the marriage of the appellant and about two months before the birth of the child of the prosecutrix, in which he, the sister and half-sister each testified that in a conversation that then occurred between the prosecutrix and the appellant with respect to their past relations, her then condition and his reported contemplated marriage to another woman, he told her he was willing to marry her and offered to do so, in reply to which she said she would not marry him and

advised him to marry the woman to whom he was soon thereafter married.

This meeting of the parties named at the residence of Mrs. Tipton and some parts of the conversation that there occurred were admitted, or at any rate,.not denied by the prosecutrix in giving her testimony. But it was denied by her that the appellant then agreed or offered to marry her, that she then rejected such offer, or advised him to marry the other woman. She, however, testified that the appellant proposed to her that she go to a hospital for the birth of her child, for which he would furnish her the money; and that he would take charge of and provide for the child after its birth. All of which offers she said were declined by her. But it cannot be determined from her testimony whether these alleged offers were made and declined at the time of her meeting with appellant at the residence of Mrs. Tipton or on a previous occasion. The making of the offers last referred to were denied by him.

But without further discussing the evidence in detail it is only necessary to say, that the appellant's claim of right to a directed verdict at the hands of the trial court cannot be rested on the ground that by a provision of the statute defining the crime of seduction, the prosecution against him for the crime of seduction charged was barred by a *bona fide* offer of marriage made by him to the prosecutrix before its institution, although such offer was rejected by her. For to entitle him to a directed verdict on this ground the offer of marriage and her rejection of same must have been established by uncontroverted evidence, which was not done in this case. While the appellant's own testimony and its corroboration, in part, by his sisters, furnished evidence of an offer of marriage claimed to have been made by him to the prosecutrix during her pregnancy and before his indictment, and her rejection of same. On the other hand, her testimony contained a denial of such offer of marriage on the part of the appellant, and also went to the extent of declaring that no offer of marriage was made her by him after his discovery of her pregnancy. There was, therefore, a contrariety of evidence as to these offers of marriage that raised an issue of fact, which, had this been the only ground of defense interposed by the appellant, would of itself have required the submission of the case to the jury.

The defense in question is expressly authorized by the statute, which, after defining the crime of seduction, provides:

"No prosecution shall be instituted when the person charged shall have married the girl seduced, and any prosecution instituted shall be discontinued if the party accused marry the girl seduced before final judgment. . . . "

In Comlth. v. Wright, 16 R. 251, 27 S. W. 815, this court affirmed the judgment of the circuit court, which dismissed an indictment for seduction against Wright, who upon the calling of the case for trial offered then and there to marry the woman whom he had seduced, but whose refusal of the offer prevented the marriage. In announcing its commendation of the action of the trial court in dismissing the prosecution this court said:

"The marriage of the parties is the purpose, intent and spirit of the statute. Within its keeping the past misery and shame may be forgotten, the future happiness of both secured; so that, the statute being so construed, although the seducer be forced almost to the very doors of the penitentiary, before offering to fulfill his promise of marriage, yet, having done so in good faith, and his offer having been declined, he can do no more, the woman, and not the man, defeats the object and purpose of the law."

In the later case of Ingram v. Comlth., 114 Ky. 726, in commenting upon the opinion of the case, *supra,* and approving its soundness, the court again said:

"If, therefore, the offense denounced by the statute may, as in the case *supra,* be condoned because of an offer of reparation made at the eleventh hour, may not an earlier offer of atonement by the offender merit a like favor at the hands of the law? Appellant testified that such an offer was made by him in good faith, and if so, and it was rejected by the prosecutrix, the defense thus presented was authorized by the statute, and the jury should have been instructed thereon by the court."

The appellant's insistence that his motion for a directed verdict should have been sustained because the

evidence was insufficient to require the submission of the case to the jury or to authorize his conviction of the crime charged, will now be considered.

While the testimony of the prosecuting witness is direct in its relation of repeated promises of the appellant to marry her, made both before and after the first and subsequent acts of sexual intercourse that occurred between them, it is indefinite as to when or where the promises were made, and fails to positively indicate that any such promise of marriage was made by him at the time of or immediately preceding such intercourse. It also fails to show when, or where, any promise of marriage made by him was to be fulfilled, or that she was induced by any such promise to assent or yield to the first or any act of sexual intercourse in which they indulged. And that she did not rely on the appellant's promises of marriage at any time is to be implied from her admission that they were made in so jesting a manner or "with so much foolishness" that she was left in doubt as to his meaning, and the further fact that her intimate acquaintenanceship with him made her familiar with his habit of jesting.

In one respect, however, her testimony was definite and strong, that is that such promises or offers of marriage as were made her by the appellant, whether before, at the time of, or after the act of sexual intercourse by which her seduction was accomplished, were in every instance rejected by her. In yet another respect her testimony was equally as positive as in the particular last mentioned, viz., in its several assertions that she was all the while unwilling to marry the appellant before and until her pregnancy was discovered by her, of which unwillingness she repeatedly informed him.

The authorities we have been able to consult seem to hold that where seduction is punishable as a crime only when under a promise of marriage, such promise is a necessary element of the crime; and it must be made to appear that the promise was made and the prosecutrix yielded in consequence of such promise and not to gratify her lustful passion. In 24 R. C. L., section 44, pp. 764-5, it said:

> "It is not necessary that the promise of marriage be valid between the parties. It is enough that a promise is made, which is a consideration for and

inducement to the intercourse. The fact that an infant female's promise of marriage is voidable is no defense if she understood it to be valid. Likewise the fact that the defendant's infancy will enable him to avoid civil liability for his promise to marry is no defense in the criminal prosecution. . . . Clearly that the defendant made the promise of marriage as a piece of 'devilment' and not with the intention of keeping it, is no defense, unless the fact that he was merely jesting was known to the prosecutrix at the time.''

In Morehead v. Comlth., 194 Ky. 592, it is said:

"But this prosecution is founded on a statute. Any act, deception or artifice used in accomplishing the seduction is competent as tending to prove the offense, but the statute requires that it be committed under promise of marriage. Certainly if the statute does not require any express promise, it requires such action and words as clearly imply a promise."

Again, in volume 24 R. C. L., section 45, pages 765-6, it is further said:

"In those jurisdictions where a promise of marriage is by statute essential to criminal seduction the authorities are practically agreed that intercourse procured through a promise to marry the person seduced in case the intercourse results in pregnancy does not amount to criminal seduction. . . . But when the seduction is accomplished by means of a promise of marriage, to be performed only on the condition that the intercourse results in pregnancy, no promise of the woman can be implied from such yielding, and the contract smacks too much of a corrupt and licentious bargain to fall within the statute."

Tested by the rule thus stated the evidence furnished by the testimony of the prosecutrix merely shows that such promise of marriage as was made her by the appellant when or before the intercourse by which her alleged seduction was accomplished took place between them, if relied on by her at all, was with the reservation on her part that it was to be performed only upon the condition that such intercourse resulted in her pregnancy. This

is clearly established, we think, by her frank admission, more than once repeated while on the witness stand, that she was unwilling to marry the appellant and never consented to do so until she became aware of her pregnancy. It therefore follows, that the verdict and judgment convicting the appellant of the crime of seduction charged were flagrantly against and wholly unsupported by the evidence. Hence, his motion for a directed verdict of acquittal should have been sustained.

This conclusion renders consideration of the appel-lant's complaint of the instructions unnecessary. It is, however, proper to say that they seem to have correctly presented all the law applicable to the crime of seduction, and had the case been properly submitted to the jury would have sufficiently protected the rights of the appellant. For the reasons indicated the judgment is reversed and prosecution remanded for a new trial, and such further proceedings as may not be inconsistent with the opinion.